UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    vs.<br><br>JOHN SCHRUM,<br><br>             Defendant. | CR. 18-50143-01-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant John Schrum, appearing *pro se*, filed a motion for compassionate release together with a brief summary of his current medical conditions.   (Docket 102).   Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Schrum's motion.   (Dockets 103-06 & 114).   For the reasons stated below, defendant's motion is granted.

**STANDING ORDER 20-06**

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system."   (SO 20-06 at p. 1).   Under

---

[1]See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").

the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act."   Id. ¶ 1.   The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already.   These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]"   Id. at p. 2 ¶ 4.   Those categories are:

> a.   High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .
>
> b.   Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.
>
> c.   Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.
>
> d.   Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

2

Id.   The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."   Id.   The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the court.   Id. ¶ 5.   The priority of briefing is set according to the different categories of assignment of a defendant.[2]   Id. ¶¶ 6-8.

**FACTUAL BACKGROUND**

On January 27, 2020, defendant John Schrum was sentenced to a term of imprisonment of 120 months for conspiracy to distribute a controlled substance, methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Docket 75).   This sentence was the statutory minimum term of imprisonment mandated by 21 U.S.C. § 841(b)(1)(A).   But for this mandatory minimum sentence, according to Mr. Schrum's presentence report ("PSR"), "[b]ased on a total offense level of 31 and a criminal history category of I, the guideline imprisonment range [would have been] 108 months to 135 months."   (Docket 42 ¶ 59).

Mr. Schrum is currently an inmate at the Federal Medical Center in Ft. Worth, Texas.   (Docket 102 at p. 3).   The parties agree Mr. Schrum has a scheduled release date of March 2, 2028.   (Dockets 107 at p. 1 (referencing Docket 105 at p. 246) & 110 at p. 1 (referencing https://www.bop.gov/

---

[2]SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution.   See https://www.sdd.uscourts.gov/socraa.   The amendments have no impact on the court's analysis of this case.

3

inmateloc/ (last checked by government counsel on August 11, 2020))).   After Mr. Schrum filed his motion for compassionate release, the BOP modified Mr. Schrum's scheduled release date to June 18, 2028.   https://www.bop.gov/ inmateloc/ (last accessed December 11, 2020).   No explanation for this 106-day difference has been provided to the court.   As of this date, Mr. Schrum has served 13 percent of his sentence and under his current status in the BOP, Mr. Schrum's home detention eligibility date is September 2, 2027.   (Docket 105 at pp. 245-46).   Mr. Schrum is 48 years old.   Id. at p. 245.

Mr. Schrum's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health during the COVID-19 pandemic.   (Docket 102).   Mr. Schrum suffers from:

- Type 2 diabetes.   (Docket 104 at p. 1);

- Morbid obesity . . . his weight fluctuates between 411 pounds and 276.6 pounds and his body mass index fluctuates between 38.5 and 47.   Id. at pp. 55, 109, 163-64 & 167 and Docket 106 at pp. 2 & 168;

- Chronic obstructive pulmonary disease ("COPD").   Chronic cigarette smoker who smoked one pack per day for 26 years.   (Dockets 104 at p. 167 & 106 at p 2);

- Severe obstructive sleep apnea.   C-Pap with supplemental oxygen.   (Dockets 104 at pp. 1, 52, 92, 101 & 203 and 106 at p. 2);

- Hypertension.   (Docket 104 at pp. 1 & 52-53);

- History of pulmonary embolism.   (Docket 106 at pp. 1 & 12-13);

- History of brain aneurysm.   Id. at pp. 223-224; and

- Brain hemorrhagic lesion.   (Docket 114 at pp. 1 & 11).

4

Mr. Schrum's chronic conditions are reaffirmed throughout his medical records. See Dockets 104-06 & 114.

Mr. Schrum's prescription medications include metFormin HCI to treat his type 2 diabetes; Warfarin a blood thinner to treat venous thrombosis and pulmonary embolism; Atorvastatin used to treat his hyperlipidemia (high cholesterol); and Lisinopril an angiotensin-converting enzyme (ACE) inhibitor is prescribed to lower high blood pressure to prevent heart attacks and strokes.[3] (Docket 104 at pp. 206-08). Mr. Schrum requires attention at the Ft. Worth BOP's anticoagulation clinic for anticoagulation monitoring. (Docket 104 at pp. 1 & 4).

Addressing the 18 U.S.C. § 3553(a) factors, Mr. Schrum contends he "has [a] limited criminal history. His only prior convictions [were] over 20 years old." (Docket 107 at p. 14). When arrested on the present case in Colorado, Mr. Schrum submits he was "released on a personal recognizance bond, and ordered to report to the District of South Dakota, which he did without incident." Id. He points out that "[h]e has a minimum risk level score at the BOP. . . . [and] has not had any disciplinary violations since reporting to prison." Id. Mr. Schrum contends "[h]e would not pose a danger to the community if released." Id. (referencing U.S.S.G. § 1B1.13(2)).

Mr. Schrum represents that if released from custody he would have "a safe and stable place to stay . . . with his mother . . . in Fort Morgan, Colorado." Id.

---

[3]https://www.webmd.com/drugs/2/drug-6873-9371/lisinopril-oral/lisinopril-oral/details (last visited October 21, 2020).

5

at p. 15.   "[T]o support himself and provide for medical care," Mr. Schrum

intends "to apply for disability[.]"   Id.

## MR. SCHRUM'S CLASSIFICATION

On July 23, 2020, the FPD and the U.S. Attorney filed a notice of

categorization of compassionate release motion.   (Docket 103).   They jointly

"agree . . . [Mr. Schrum's] case should be categorized as an Intermediate Priority

case."   Id.

## ANALYSIS

Section 3582(c) permits the district court to consider a prisoner's request

for compassionate release after he exhausts the administrative remedies

mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden of
> the defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that . . . extraordinary and compelling reasons
> warrant such a reduction . . . and that such a reduction is consistent
> with the applicable policy statements issued by the Sentencing
> Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Shrum exhausted the administrative procedure

provision contemplated by § 3582(c)(1)(A).   Appearing through counsel, Mr.

Shrum submitted a request for compassionate release on May 31, 2020.

(Docket 105 at pp. 1-2).   On June 9, 2020, Warden Eric D. Wilson denied Mr.

Shrum's request for a reduction of sentence.[4]   Id. at p. 3.   The warden's

conclusion was based on the standard for "extraordinary or compelling reasons"

delineated in "Program Statement 5050.50, Compassionate Release/Reduction

in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and

4205(g)[.]"   Id.   The factors in Program Statement 5050.50 are the same as

those stated in the United States Sentencing Guidelines ("U.S.S.G.").   Compare

(Docket 61-1 and U.S.S.G. § 1B.1.13 cmt.1(A)-(C)).   However, the court's

consideration of extraordinary and compelling reasons under 18 U.S.C.

§ 3582(c)(1)(A)(i) is not tied to U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) (U.S.S.G. 2018)

or the COVID-19 home confinement provisions of the CARES Act, Pub. L. No.

116-136, Section 12003(b)(2).

    "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and

compelling reasons' that might merit compassionate release."   United States v.

McCoy, No. 20-6821, 2020 WL 7050097, at *3 (4th Cir. Dec. 2, 2020).   That task

was left to the United States Sentencing Commission.   "[I]n promulgating

general policy statements regarding the sentencing modification provisions in

section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what

should be considered extraordinary and compelling reasons for sentence

---

[4]On March 26, 2020, United States Attorney General William Barr issued a memorandum to the Director of Bureau Prisons captioned "Prioritization of Home Confinement As Appropriate In Response to COVID-19 Pandemic." https://www.bop.gov/coronavirus/ (Last visited October 22, 2020).   Warden Wilson's decision did not mention the memorandum or the option of home confinement.   (Docket 105 at p. 3).

reduction, including the criteria to be applied and a list of specific examples."
28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four
categories for "extraordinary and compelling reasons for sentence reduction,
including the criteria to be applied and a list of specific examples."   28 U.S.C.
§ 994(t).   Those categories generally focus on the defendant's age, medical
condition, family situation and any other reasons the BOP deems to be
extraordinary and compelling.   U.S.S.G. § 1B1.13 cmt. n.1.   The four categories
have not been updated since December 2018 when the First Step Act became
law.[5]

The United States Courts of Appeals for the Second, Fourth, Sixth and
Seventh Circuits have addressed the court's authority under the First Step Act.[6]
See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v.
McCoy, 2020 WL 7050097; United States v. Jones, No. 20-3701, 2020 WL
6817488 (6th Cir. Nov. 20, 2020); and United States v. Gunn, Case No. 20-1959,
2020 WL 6813995 (7th Cir. Nov. 20, 2020).

The Second Circuit identified the question at the heart of these cases,
which is "whether the First Step Act allows courts independently to determine

---

[5]The United States Sentencing Commission lacks a quorum and "currently
has only two voting members, two shy of the four it needs to amend the
[U.S.S.G.]."   United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020)
(references omitted).

[6]The United States Court of Appeals for the Eighth Circuit had two clear
opportunities to address this issue but declined to do so.   United States v. Rodd,
966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d
891 (8th Cir. July 31, 2020).

what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." Brooker, 976 F.3d at 234. The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." Id. The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237; see also Gunn, 2020 WL 6813995, at *2 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 2020 WL 6817488, at *9 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 2020 WL 7050097, at *8 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."   Brooker, 976 F.3d at 237.   See also McCoy, 2020 WL 7050097, at *9 (same); Jones, 2020 WL 6817488, at *9 (same); Gunn, 2020 WL 6813995, at *2 (same).   The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Schrum meets the criteria of U.S.S.G. § 1B1.13, application note 1(A)(ii).   The application note in pertinent part provides: "[T]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."   (U.S.S.G. § 1B1.13, note 1(A)(ii)(I)).   Mr. Schrum satisfies this criteria by the government's own guidelines.

> [T]he Department of Justice has determined that, during the COVID-19 pandemic, having morbid obesity, emphysema and Type 2 diabetes mellitus, which the CDC has indicated are conditions at increased risk of severe illness due to COVID-19, present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself.

10

http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions-people-with-medical-conditions.html (last visited December 11, 2020).

Ft. Worth BOP classifies Mr. Shrum as a Care Level 3 inmate.   (Docket 104 at p. 58).   Under the BOP system

> Inmates with Care Level 3 needs are fragile outpatients who require frequent clinical contacts, and/or who may require some assistance with activities of daily living, but do not require daily nursing supervision.   This Care Level may include stabilization of medical or mental health conditions that may require periodic hospitalization.

https://www.bop.gov/resources/pdfs/legal_guide_march_2019.pdf at p. 27 (last visited October 22, 2020).

The Centers for Disease Control and Prevention ("CDC") found "adults of any age . . . are at increased risk of severe illness" from COVID-19 if they have any of the following conditions, of which Mr. Schrum has three: "COPD" . . . "Severe Obesity" . . . and "Type 2 diabetes mellitus."   https://www.cdc.gov /coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (bold omitted) (last visited December 11, 2020).   Additionally, the CDC warns an adult like Mr. Schrum "might be at an increased risk of severe illness" because of his "[h]ypertension or high blood pressure."   Id. (bold omitted).

While not mentioned by the parties, Mr. Schrum was a one pack per day cigarette smoker for 26 years.   (Docket 106 at p. 2).   According to the CDC's new guidance issued October 6, 2020, being a current or former smoker creates

an "increased risk of severe illness from the virus that causes COVID-19."

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (bold omitted) (last visited October 23, 2020).

The court generally was aware of Mr. Schrum's health issues at the time of sentencing.   See PSR ¶¶ 44-47.   At sentencing, Mr. Schrum was on oxygen during the day as well as with a C-PAP system at night.   Id. ¶ 44.   It is unclear from his BOP medical records whether Mr. Schrum continues to require oxygen during the day.   Based on the court's detailed review of the extensive medical records, Mr. Schrum's major health issues and risk factors are chronic, that is, medically speaking his conditions will only get worse over time.   These conditions put Mr. Schrum's life at risk.

Ft. Worth FMC currently has 26 COVID-19 positive inmates and 19 positive staff members.   https://www.bop.gov/coronavirus/ (last visited December 11, 2020).   With a population of 1,286 inmates, Ft. Worth FMC has had a total of 620 inmates test positive and 12 inmate deaths.   Id.

Against these findings, the court must consider if compassionate release comports with the § 3553(a) factors.   In Mr. Schrum's case, the "nature and circumstances of the offense"—conspiracy to distribute methamphetamine—is serious.   18 U.S.C. § 3553(a)(1).   "[T]he history and characteristics of the defendant," requires the court to consider the defendant as a whole person.   Koon v. United States, 518 U.S. 81, 113 (1996).   Over the course of six months

12

at age 24-25, Mr. Schrum was arrested and convicted in Colorado of two felony offenses of possession or sale of methamphetamine.   See PSR ¶¶ 33-34.   In each instance, Mr. Schrum received suspended penitentiary sentences, local jail custody and probation.   Id.

For the 22 years prior to the conduct resulting in the present conviction, Mr. Schrum was a law-abiding citizen.   With a total criminal history score of "0," Mr. Schrum's criminal history category was a "I."   Id. ¶ 36.   During the presentence interview, Mr. Schrum indicated "his medical conditions led to his involvement in the conspiracy because he was unable to breathe or stay awake without using methamphetamine."   Id. ¶ 19.   Since being in BOP custody, Mr. Schrum has not received any disciplinary write-ups.   (Docket 104 at p. 241).

Setting aside consideration of the ten-year mandatory minimum sentence, Mr. Schrum's guideline range would have been 108 to 135 months.   (18 U.S.C. § 3553(a)(2); PSR ¶ 59).   Contrary to the government's argument, the court was not permitted to consider the § 3553(a) factors for a sentence below the mandatory minimum sentence.   But for the mandatory minimum sentence, the court would have departed downward from the guidelines to home detention or probation because of Mr. Schrum's medical condition.   See U.S.S.G. § 5H1.4.

> Physical condition . . . may be relevant in determining whether a departure is warranted, if the condition . . . is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines.   An extraordinary physical impairment may be reason to depart downward; *e.g.*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than imprisonment.

Id.  The same would have been true to support a downward variance to probation or home detention under 18 U.S.C. § 3553(a)(1).

Considering the defendant's health condition, his behavior on pretrial release, his behavior at the Pennington County jail following his guilty plea and awaiting sentencing and his behavior while incarcerated, as well as the supervised release special conditions imposed at sentencing, additional incarceration is not necessary "to protect the public from further crimes of the defendant."  Id. § 3553(a)(2)(C); see also PSR ¶ 4.   Mr. Schrum's obligation to comply with the terms of supervised release would best "provide the defendant with . . . correctional treatment in the most effective manner."   Id. § 3553(a)(2)(D).

Incarceration is not the only "kind[] of sentence[] available."   Id. § 3553(a)(3).   A noncustodial sentence will limit Mr. Schrum's liberty interests through supervised release and he will face harsh consequences if he violates the special conditions activated upon his release from BOP custody.   United States v. Gall, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005), rev'd, 446 F.3d 884 (8th Cir. 2006), rev'd, 552 U.S. 38 (2007).   Those special conditions promote respect for the law, protect the public and do not constitute any approval of Mr. Schrum's criminal conduct.   Id.

The controlled substance statute mandated a mandatory minimum sentence, but this is just one factor for the court to consider.   18 U.S.C. § 3553(a)(4).   At this juncture, use of the First Step Act will not create "unwarranted sentence disparities among defendants with similar records who

14

have been found guilty of similar conduct."   Id. § 3553(a)(6).   The court finds

compassionate release is appropriate and Mr. Schrum will not pose a danger to

the public.

The court finds Mr. Schrum met his burden of proof and presented

"extraordinary and compelling reasons" warranting a sentence reduction under

§ 3582(c)(1)(A)(i).   The court does not have authority to modify the defendant's

sentence to home confinement.   United States v. Amarrah, Case No. 17-20464,

2020 WL 2220008, at *8 (E.D. Mich. May 7, 2020).   The court does, however,

retain the authority to reduce Mr. Schrum's sentence to time served.   Following

his release from custody, Mr. Schrum will remain on supervised release for five

years, subject to the mandatory and standard conditions and the special

conditions of supervised release imposed in the original sentence.   (Docket 75 at

pp. 4-5).

Arrangements are in place to transfer supervision to the District of

Colorado so Mr. Schrum can commence his period of supervised release in that

district.

**ORDER**

Good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket

102) is granted.

IT IS FURTHER ORDERD that the defendant's sentence of imprisonment

is reduced to time served.

IT IS FURTHER ORDERED that upon his release, Mr. Schrum shall reside at the home of his mother, Alvina Schrum, in Ft. Morgan, Colorado.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. Schrum must report, by telephone, 303-844-5424 or 800-616-4385, to the United States Probation and Pretrial Services Office for the District of Colorado in the Byron Rogers United States Courthouse, 1929 Stout Street, Suite C-120, Denver, CO 80294-0005.

IT IS FURTHER ORDERED that Mr. Schrum shall remain on supervised release for five years, subject to the mandatory and standard conditions of supervision and the special conditions of supervision imposed in the original sentence of January 27, 2020.   (Docket 75 at pp. 4-5).

IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

Dated December 11, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

16